Nat H. Heíttel, J.
The parties entered into a lease dated May 14,1965, for five years for the store and basement premises at 136-77 Roosevelt Avenue, Flushing» At the end of the first five-year term, tenant exercised its lease option and renewed for a second five-year term. Under paragraph ‘ ‘ 40 ’ of the lease, ^pht escalation was provided as follows: $1,125 per month for the first two years; $1,250 per month for the next three years; and $1,437.50 per month for the next five years. The lease was prepared for the landlord by his attorney 'and where-ever there are ink inserts to the typewritten portion of paragraph “ 55 ”, it is admitted that such inserts are in the handwriting of the landlord’s attorney and were made during final lease negotiations immediately prior to the execution, of the lease by-the parties.
The sole dispute is the meaning of paragraph “ 55 ” which reads: “ In the event that the real estate taxes on the demised premises, whether by increase of tax assessments or .rates, shall exceed the taxes fixed for the year 1966-1967, which the parties agree to insert when same is received by the Landlord, Tenant shall pay, in any such year, as additional rent hereunder, the first Three Hundred Dollars of any such increase. In the event any such increase exceeds the sum of $300.00, Tenant shall pay to Landlord, in addition to the first $300.00, a sum equal to one-half of any such increase, including the said first $300.00. In no event shall Tenant be obligated under this paragraph to contribute more than $1,000.00 during the first 5 years of tjie term, and no more than $1,200.00 during the second five years of the term. ’ ’ (Italicized portion indicates handwritten ink insertions in this paragraph).
*915 The court notes from the filed papers that the real estate taxes for these premises for 1966-1967 were $3,374.32; and that for 1971-1972, $4,350.
The landlord contends that the phrase “ in any such year ” requires the tenant to pay the first $300 of increased taxes plus one half of the overage annually in every year such increase occurs. It is the tenant’s position that the later phrase in the same paragraph, “In no event [etc.]” represents words of limitation and establishes a cumulative ceiling for total additional rent, in addition to the lease’s escalating rent provisions, to be paid within a specified five-year period. If landlord is right, then tenant owes landlord considerably more in “ additional rent ’ ’ than tenant claims it bargained for when the lease was negotiated.
Query: Is tenant obligated to pay more than $1,200 as additional rent ” to compensate landlord for increasing realty taxes during the second five years of this lease?
In coming to grips with this problem of construction, the court notes the holdings in:
(1) Rodolitz v. Neptune Paper Prods. (22 N Y 2d 383, 386), where it was said: ‘ ‘ The rule is well settled that a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract ’ ’. (Emphasis supplied.)
(2) Newberry Co. v. Kingston Plaza (31 A D 2d 862), where it was noted that£ £ the language of the agreement * * * was inserted by appellant, and in such case, any ambiguity must be construed against the draftsman of the instrument. (Rentways, Inc. v. O’Neill Milk & Cream Co., 308 N. Y. 342.) ”
(3) General Venture Capital Corp. v. Wilder Transp. (26 A D 2d 173, 177), which enunciated: “where the ‘remaining doubt as to the proper interpretation is merely as to which of two possible and reasonable meanings should be adopted, the court will adopt that one which is the less favorable in its legal effect to the party who chose the words.’ (3 Corbin, Contracts, § 559, p. 262.) ”
(4) Black v. General Wiper Supply Co. (305 N. Y. 386, 390), where the court ruled: “We begin with the rule, now firmly fixed, that no charges shall be imposed upon a tenant in addition to those specified in the lease. ‘ The law is well settled ’, this court recently wrote, ‘ that changes in a lease are not to be presumed or implied; and no additional liability will.be imposed *916 upon a tenant unless it is clearly within the provisions of the instrument under which it is claimed. If the instrument contains any ambiguity it must be resolved against the landlord and in favor of the tenant. ’ (455 Seventh Ave. v. Hussey Realty Corp., supra, 295 N. Y. 166,172.) ”
With these holdings in. mind, the court now turns back to the language of paragraph “ 55 ”. The court is impressed'by the fact that the first pen and ink insert in that paragraph “ in any such, year ” could easily have been inserted in the second pen and ink insert later in that same paragraph so that it would read: “In no event shall Tenant be obligated under this paragraph to' contribute more than $1000.00' [“ in any such year ”] during the first 5 years of the term [etc.] ”. Yet, the landlord’s draftsman did not insert such phrase where indicated which he should have done if that, in fact, was the clear intention of the parties. The landlord now seeks to have this court insert such a phrase in the last sentence of the disputed paragraph. As was said by the court in Wilson Sullivan Co. v. International Paper Makers Realty Corp. (307 N. Y. 20, 25): “ A simple answer is that since no such term expressly appears, it cannot be supplied by the courts under the guise of construction of interpretation, their power being limited to giving effect only to the parties ’ expressed intent. - * * * We ‘ concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote ’ (Raleigh Associates v. Henry, 302 N. Y. 467, 473.) ”. The courts, in short, will not give to the lease a meaning which either of the parties prefers, or which the courts think the parties intended. If the intent is clear, it must prevail, if it is unclear, it must be construed against the draftsman. (See Rasch, New York Landlord and Tenant [2d ed.], § 108, pp. 172-174.)
The first sentence of the paragraph in issue starts with the wordsIn the event ”, as does the second sentence. The third sentence starts “ In no event ”, and the court construes this latter phrase as words of limitation superimposed upon the provisions of the whole paragraph. They are final and determinative! They mean, in this court’s opinion, that it was the intention of the parties to limit cumulatively the amount to be paid by the tenant as additional rent for taxes during the whole of, the first five years of the term to, no more than $1,000; and during the whole of the second five years of the term to no more than an additional $1,200. To hold otherwise would mean that this court would be doing that which it cannot do, and that is to rewrite the contract for the parties. It is to be noted that a *917 landlord usually provides for rent escalation in a long-term lease to cover such increased cost contingencies as increasing taxes.
Accordingly, the petition, insofar as it claims arrearages for taxes due under the landlord’s interpretation of paragraph “ 55 ”, is dismissed as being without merit, and judgment is rendered in favor of the tenant.